Citation Nr: 1513784 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 13-09 440 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Seattle, Washington


THE ISSUE

Entitlement to an initial compensable rating for hypertension prior to September 20, 2013, and a rating higher than 10 percent since.


REPRESENTATION

Appellant represented by: National Association of Black Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

N. Sangster, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1973 to April 1993.

She appealed to the Board of Veterans' Appeals (Board/BVA) from a September 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO).

In November 2014, as support for her claim, she testified at a hearing at the RO before the undersigned Veterans Law Judge (VLJ) of the Board - in other words at a Travel Board hearing. A transcript of the hearing is of record.

During the pendency of this appeal, in an intervening October 2013 rating decision, the RO increased the rating for the Veteran's hypertension from 0 to 10 percent as of September 20, 2013. So this appeal now concerns whether she was entitled to an initial rating higher than 0 percent (i.e., a compensable rating) prior to September 20, 2013, and whether she has been entitled to a rating higher than 10 percent since. The increase in rating during the pendency of this appeal was a "staging" of the rating for this service-connected disability to compensate her for this increase in its severity. See Fenderson v. West, 12 Vet. App. 119, 125 (1999). She is continuing to appeal for an even higher rating, however. See AB v. Brown, 6 Vet. App. 35, 39-39 (1993) (It is presumed a Veteran is seeking the highest possible rating for a service-connected disability, so receipt of a higher rating, but less than the maximum possible rating, does not abrogate a pending appeal).

While the Board is deciding her claim for an initial compensable rating for her hypertension prior to September 20, 2013, regretfully, the Board instead is remanding her claim for a rating higher than 10 percent since to the Agency of Original Jurisdiction (AOJ) for necessary further development.



FINDING OF FACT

Prior to September 20, 2013, the Veteran's hypertension was not manifested by diastolic pressure of predominantly 100 or more or systolic pressure of predominantly 160 or more, even though she required continuous medication for control of this disease.


CONCLUSION OF LAW

Prior to September 20, 2013, the criteria are not met for a compensable rating for the hypertension. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.104, Diagnostic Code (DC) 7101 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. The Duties to Notify and Assist

As provided by the Veterans Claims Assistance Act (VCAA), VA has duties to notify and assist a claimant in substantiating a claim for VA benefits upon receipt of a complete or substantially complete application. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will obtain and assist the claimant in obtaining; and (3) that the claimant is expected to provide. See 38 C.F.R. § 3.159(b)(1); see also Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); Charles v. Principi, 16 Vet. App. 370, 373-74 (2002).

When, as here, however, the claim arose in the context of the Veteran trying to establish her underlying entitlement to service connection, and this since has been granted and she has appealed a "downstream" issue such as the initial rating assigned for her disability, the underlying claim has been more than substantiated, it has been proven, thereby rendering § 5103(a) notice no longer required because the initial intended purpose of the notice has been served. See Goodwin v. Peake, 22 Vet. App. 128 (2008). So, in this situation, VA is not required to provide her additional VCAA notice concerning the downstream disability rating and effective date elements of her claim. See also Dunlap v. Nicholson, 21 Vet. App. 112 (2007) and VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004). According to the holding in Goodwin and its progeny, instead of issuing an additional VCAA notice letter in this situation concerning the downstream disability rating element of the claim, the provisions of 38 U.S.C.A. § 7105(d) require VA to issue a statement of the case (SOC) if the disagreement is not resolved, and this occurred.

Prior to initially adjudicating the Veteran's underlying claim of entitlement to service connection for her hypertension, so in the preferred sequence, a May 2004 letter was sent to her in accordance with the duty-to-notify provisions of the VCAA. See Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II). Moreover, once she appealed the "downstream" initial rating for her hypertension, the RO sent her the required SOC, also since has provided her a supplemental SOC (SSOC), which together focused on this "downstream" initial rating element of her claim. That satisfied VA's notice obligation concerning this downstream claim. Therefore, she has received all required notice concerning this claim.

The Board also finds that VA has made reasonable efforts to assist her in obtaining evidence necessary to substantiate her claim. 38 U.S.C.A. § 5103A (West 2014). To this end, her service treatment records (STRs) have been obtained and associated with her claims file for consideration, as well as all pertinent post-service or identified records that could be obtained, whether from VA or private sources. As well, she had VA compensation examinations in September 2005 and June 2010. Those VA examinations are more than adequate for deciding this claim because the reports contain the information needed to address the applicable rating criteria to properly adjudicate this claim, especially in terms of assessing the severity of her hypertension for the time period at issue, that being prior to September 20, 2013. Barr v. Nicholson, 21 Vet. App. 303 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). VA's duty to assist therefore has been met. 

Finally, the Veteran also as mentioned testified at a Travel Board hearing in November 2014. The hearing was in compliance with required procedures as the presiding VLJ - the undersigned - duly explained the issues and identified possible sources of evidence that may have been overlooked and that might be potentially advantageous to the Veteran's position. 38 C.F.R. 3.103(c)(2); Bryant v. Shinseki, 23 Vet. App. 488 (2010). The Veteran has not asserted during or since the hearing that VA failed to comply with 38 C.F.R. § 3.103(c)(2) or otherwise identified any prejudice in the conducting of the hearing. The hearing focused on the elements necessary to substantiate the claim and, consistent with Bryant, the presiding VLJ complied with the duties set forth in section 3.103(c)(2).

II. Whether an Initial Compensable Rating for the Hypertension prior to September 20, 2013 is Warranted

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule). The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2014). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014). All reasonable doubt material to the determination is resolved in the Veteran's favor. 38 C.F.R. § 4.3 (2014).

Where entitlement to compensation already has been established and increase in disability rating is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Therefore, although the Board has reviewed all of the evidence of record, the more critical evidence is that generated during the appeal period. VA must assess the level of disability from the date of initial application for service connection and determine whether the level of disability warrants the assignment of different disability ratings at different times over the life of the claim, a practice known as a "staged" rating. See again Fenderson v. West, 12 Vet. App 119, 125-26 (1999). See also Hart v. Mansfield, 21 Vet. App. 505 (2008) (holding this practice also is applicable to claims that do not involve initial ratings, rather, established ratings).

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and, above all, coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, irrespective of whether the Veteran raised them, as well as the entire history of his disabilities in reaching its decision. Schafrath, 1 Vet. App. 589.

Generally, the Board has been directed to consider only those factors contained wholly in the rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); but see also Mauerhan v. Principi, 16 Vet. App. 436 (2002) (finding it appropriate to consider factors outside the specific rating criteria in determining level of occupational and social impairment owing to a mental disorder).

For this initial period at issue prior to September 20, 2013, the Veteran had a 0 percent (so noncompensable) rating under 38 C.F.R. § 4.104, DC 7101, which specifically concerns hypertension. Under this code, a higher 10 percent rating is warranted for hypertensive vascular disease when the diastolic pressure is predominantly 100 or more; or systolic pressure is predominantly 160 or more; or when continuous medication is shown necessary for the control of hypertension and there is a history of diastolic blood pressure of predominantly 100 or more. A 20 percent rating is warranted for diastolic pressure of predominantly 110 or more or systolic pressure of predominantly 200 or more. A 40 percent rating is warranted for diastolic pressure of predominantly 120 or more. A 60 percent rating is warranted for diastolic pressure of predominantly 130 or more. Hypertension or isolated systolic hypertension must be confirmed by readings taken two or more times on at least three different days. The term hypertension means the diastolic blood pressure is predominantly 90 or greater, and isolated systolic hypertension means the systolic blood pressure is predominantly 160 or greater with a diastolic blood pressure of less than 90. Id.

In every instance where the schedule does not provide a zero percent evaluation for a DC, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31.

Turning now to the relevant facts, the Veteran filed her claim for hypertension in April 2004. Her STRs show she began treating her condition with medication while on active duty. And post-service medical records reflect that she is currently on three medications to control her hypertension. In addition, the medical records reflect that she self-checks her blood pressure on a regular basis, so apparently has a personal monitor.

In addition, her medical records show complaints of right leg pain due to thrombosis and swelling in her legs and ankle. In July 2003, she was evaluated for her increasing right foot and ankle pain with swelling. It was noted this had been troubling her off and on for many years and that she had a history of a fracture of her right ankle at the age of 12. She reported that her ankle pain had significantly worsened during her time in basic training. She indicated her then current job entailed working several hours on her feet on hard surfaces. The evaluating clinician observed that the Veteran took Adalat for her blood pressure management, which he explained was known to cause ankle swelling. A September 2003 private medical treatment record also documented that the Veteran had "chronic right foot and ankle pain status post fracture at the age of 12" and chronic phlebitis."

But as specifically concerning her hypertension, despite numerous blood pressure readings taken during 2004, none show diastolic pressure of predominantly 100 or greater or a systolic reading of predominantly 160 or greater. Instead, her diastolic pressure ranged from 70 to 80 while her systolic pressure ranged from 120 to 142. So not only did she not have sufficiently elevated diastolic or systolic blood pressure to warrant a higher (compensable) rating during this initial period, but it certainly cannot be said that her diastolic or systolic pressure "predominantly" fell within the required higher range, meaning far more often than not.

Additionally, a December 2004 MRI revealed "mild bilateral skin edema surrounding the calves that may be related to venous, insufficiency, cellulitis, or trauma." At a follow-up visit in December 2004, the evaluating clinician reviewed the MRI noting the Veteran's history of "right lower extremity chronic thrombophlebitis status post open reduction and internal fixation of the right tibia and fibula at the age of 12." A July 2005 private medical record again noted the December 2004 MRI of the right ankle, which showed "evidence of a healed right mid tibia and tibular fracture with good alignment." The evaluating clinician also noted the Veteran's chronic skin edema and discontinued the prescribed medication of Adalat to improve the swelling in her right ankle. 

During her September 2005 VA examination, the Veteran's blood pressure readings were 138/80, 138/78 and 140/82. The examiner observed that the Veteran was prescribed Lisinopril and Hydrochlorothiazide and noted that her blood pressures had been borderline, but there was no history of myocardial infarction or strokes. Medical records further indicate that, during 2005, there were two instances when she had elevated blood pressure readings. In November 2005, she had a blood pressure reading of 160/100 and on a second reading it was 158/98. She indicated, however, that she had been checking her blood pressure at home, herself, and had systolic readings usually in the 140s and diastolic pressure in the high 90s. In December 2005, she also had a blood pressure reading of 160/80 at a follow-up visit for treatment of a persistent cough.

Subsequent to that December 2005 blood pressure reading of 160/80, but prior to September 2013, there has been only one other instance in April 2007 when the Veteran had a blood pressure reading of 170/80. At that time, she explained that she had not taken her medication on that particular day and that her blood pressure readings at home (so apparently whenever she took her medication as prescribed) were usually lower - in the 130s/80s.


Further, in response to her claim for a right leg/ankle condition, the Veteran had a VA compensation examination in May 2009. She complained of problems with deep vein thrombosis (DVT) in both calves, stating that that her right leg and foot would swell each day after work. The examiner observed the Veteran's right ankle condition had started with an ankle fracture at age 11 or 12 in a motor vehicle accident. The examiner also observed the Veteran wore 
below-the-knee support hose for treatment of the swelling of her legs. On objective physical examination of the Veteran, the examiner indicated there were positive findings for Homan's test in the right lower leg and calf secondary to DVT, but indicated the Veteran's right leg condition was not caused or aggravated by her service-connected conditions, including the right or left knee conditions and the right ankle condition.

Again, in April 2010, the Veteran had another VA examination concerning her claim for a right foot condition. The examiner acknowledged the Veteran's history of phlebitis in her right lower extremity, which he noted had occurred after release from military service and that she was treated with anticoagulants for DVT apparently discovered about four years ago. He also commented that the Veteran was being treated for hypertension. The examiner, however, explained that he could not determine whether this right foot problem (mild plantar fasciitis) was etiologically related to the Veteran's military service without resorting to mere speculation because there were no records clearly documenting a foot problem in service. He further explained that, while it was possible that chronic strain of the right ankle and knee can lead to a foot problem, the peculiar features of swelling of the foot and swelling of the Veteran's right leg and history of phlebitis indicated this problem was more likely related to peripheral vascular disease than to an orthopedic issue. But later in an October 2010 addendum medical opinion, after reviewing the Veteran's claim file that was previously unavailable, this examiner concluded the plantar fasciitis of the Veteran's right foot was indeed related to her military service. The examiner explained that plantar fasciitis may develop from mechanical injury, but that it also can evolve secondary to metabolic syndrome related issues such as hypertension, allergies, and hyperlipidemia, conditions present in the Veteran. He, therefore, concluded that it was at least as likely as not that the plantar fasciitis had begun in service. Based on this opinion, the RO granted the Veteran's claim for service connection for a right foot condition in a December 2011 rating decision.

Regarding her claim for hypertension, the Veteran had yet another VA examination in June 2010. She complained of headaches and general weakness when her blood pressure was high. She also stated that she had increased lower extremity swelling, which was noted as a residual following bilateral DVT two years prior. She additionally reported an increased dosage of Verapamil, as well as increased rest following a hospital stay in April 2010, to control her hypertension. The three blood pressure readings were 158/84, 156/82, and 156/84. Additionally, the examiner observed the Veteran's right lower leg/ankle had increased swelling and decreased definition. The examiner commented that examination of the Veteran's lower extremities had revealed positive pulses without signs or symptoms of DVT.

An October 2010 private medical opinion from D.E., the Veteran's nurse practitioner, also is of record. She explained that the Veteran was on the appropriate medications, which have been adjusted from time to time to maintain adequate coverage and reduce side effects. D.E. observed that the Veteran was compliant with her medication regimen and therapy and came in regularly for checkups.

Based on this evidence, the Board finds that a compensable rating prior to September 20, 2013 is not warranted. Although the Veteran's medical records reflect variances in her blood pressure readings prior to September 2013, except for the instances already noted, she did not have systolic readings predominantly of 160 or greater or diastolic pressures predominately of 100 or more. So when weighed collectively with the multiple findings showing systolic pressure below 160 and diastolic pressure below 100, the overall weight of the evidence clearly shows her condition is not approximated by the 10 percent rating under DC 7101 for this initial time period in question. The take away point, to reiterate, is that she not only has to have had sufficiently elevated diastolic and systolic blood pressures, but this has to have been true far more often than not ("predominantly"), rather than just on the rare occasion.

Even the times when the Veteran's diastolic or systolic pressure was sufficiently elevated, it at least occasionally was owing to the fact that she had not taken her prescribed medication at the time of that particular reading or in anticipation of it. A recent Memorandum Decision of the Veterans Court (CAVC), No. 13-1918, discussed the ameliorative effects of medication and how such impacts disability evaluations per Jones v. Shinseki, 26 Vet. App. 56 (2012). The Board's decision in this other appeal had denied a disability rating higher than 30 percent for 
service-connected tension headaches. The CAVC vacated the Board's decision.

The appellant, among other things, had argued that the Board had provided an inadequate statement of reasons or basis by failing to account for favorable evidence of the severity of his headaches. In finding that the appellant did not meet the criteria for a higher 50 percent rating, the Board had noted that, "notwithstanding the frequency and discomfort associated with the [appellant's] headache attacks, . . . the [appellant]'s economic inadaptability is not severe but rather both mild and speculative." The Board further explained: "Here, at worst, the [appellant] has indicated that his tension headaches flared up approximately three to four times per month lasting anywhere from three to four hours. The Board does not find this rate and duration to be 'very frequent' or 'prolonged.'" 

The CAVC, however, agreed with the appellant's argument that this finding appeared inconsistent with July 2007 testimony "that since Vietnam [the appellant] has been plagued with daily headaches, with multiple headaches each day, and that without medication he would be incapacitated and unable to function in a normal way once or twice per week." The CAVC found, by citing multiple pieces of evidence in the record, that it appeared that the Board took into account the effects of medication on the appellant's headaches when making this finding. Given this evidence, the CAVC concluded that the Board's analysis appeared to be inconsistent with the holding in Jones v. Shinseki, 26 Vet. App. 56 (2012). In Jones, the CAVC had held that, in assigning a disability rating, the Board may not consider the ameliorative effects of medication where such effects are not explicitly contemplated by the rating criteria. Id. at 63. The CAVC also stated that "the Board may not deny entitlement to a higher rating on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria." Id. And in this other appeal, it appeared to the CAVC that the Board had denied a higher rating, at least in part, based on the ameliorative effects of medication when the rating code did not specifically contemplate those effects.

Here, though, unlike in that other appeal, the applicable DC 7101 specifically takes into account the ameliorative effects (so benefits) of taking medication to control hypertension - as expressly indicated by the wording of the criteria for a 10 percent rating ("...who requires continuous medication for control"). During the November 2014 Travel Board hearing, as one of the reasons for believing the Veteran is entitled to a higher rating for her hypertension, even during this initial period at issue prior to September 20, 2013, the Veteran's representative cited the Veteran's need to continuously take medication for treatment and control of her hypertension. But the 10 percent rating not only requires this, however also a history of diastolic pressure predominantly 100 or more, and this is what has not also been shown (even accepting the Veteran has taken medication for several years now for treatment and control of her hypertension). Therefore, merely taking medication for treatment and control of this disease is insufficient reason to assign a 10 percent or greater rating.

Additionally, several VA examiners have considered her claims that her hypertension affects her right lower extremity, and in response the RO has accordingly granted service connection additionally for a right foot condition, albeit plantar fasciitis rather than the DVT ("thrombosis") that also has been at times shown to be present, as well. Service connection also is in effect for right ankle disability (namely, for residuals of a right ankle strain) and for right knee patellofemoral syndrome. During the November 2014 Travel Board hearing, the Veteran's representative argued that the DVT is secondary to the Veteran's hypertension, specifically, a complication of the hypertension partly owing to the medication she has to take for treatment of the hypertension. He additionally mentioned her consequent need to wear compression stockings, and he indicated he would be submitting a supporting medical nexus letter in the next 60 days linking the DVT to the hypertension. The claim of entitlement to service connection for the DVT as secondary to the hypertension, however, is a separate claim under the provisions of 38 C.F.R. § 3.310(a) and (b). See also Allen v. Brown, 7 Vet. App. 439 (1995). Indeed, as even the Veteran's representative earlier acknowledged when submitting a written statement (on VA Form 646) earlier in 2014, specifically, in February 2014, he was not actually claiming any secondary issues at that time (presumably because he would be doing so at some later point in time), only instead hypertension (meaning for a higher rating for this already service-connected disability). So even he seemingly has recognized the rating for the hypertension, which is the only claim at issue in this current appeal, is unaffected by the decision concerning this derivative claim additionally for the DVT. That is to say, these claims are not "inextricably intertwined", though in ways related. See Tyrues v. Shinseki, 23 Vet. App. 166, 177 (2009) (en banc) (explaining that claims are inextricably intertwined when the adjudication of one claim could have a significant impact on the adjudication of another claim). Moreover, service connection already has been considered and unfortunately denied for a right leg condition, so including presumably for this DVT additionally being cited as a complication of the hypertension. Therefore, the representative needs to present the additional medical nexus letter he referenced during the November 2014 Travel Board hearing to the RO as the new and material evidence needed to reopen and grant this additional claim for the DVT as secondary to the hypertension. 38 C.F.R. § 3.156.

In the meantime, however, for the reasons and bases discussed, the preponderance of the evidence is against the claim of entitlement to an initial compensable rating for the hypertension prior to September 20, 2013. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

A. Extraschedular Consideration

In evaluating the Veteran's claim for a higher rating, the Board also has considered whether she is entitled to a greater level of compensation on an extraschedular basis. Ordinarily, the VA Rating Schedule will apply unless there are exceptional or unusual factors that would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993).

The question of an extra-schedular rating is a component of a claim for an increased rating. See Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). And although the Board may not assign an extra-schedular rating in the first instance, it must specifically adjudicate whether to refer a case for extra-schedular evaluation when the issue either is raised by the claimant or reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008).

As part of the evaluation for an extraschedular rating, the Board has considered the provisions of Mittleider v. West, 11 Vet. App. 181, 182 (1998), which holds that the benefit of the doubt applies to determinations of whether a symptom should be attributed to a service-connected condition. The Board has attributed all potentially service-connected symptoms to the Veteran's service-connected condition, her hypertension, in considering whether she is entitled to an extraschedular rating.

According to the regulation, an extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1). See also Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a Veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

Here, though, with respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected disability is inadequate. A comparison between the level of severity and symptomatology of the Veteran's hypertension with the established criteria found in the Rating Schedule for this disability shows that the rating criteria reasonably describe her disability level and symptomatology. The evidence reflects systolic and diastolic blood pressure readings corresponding to the criteria found in the Rating Schedule under DC 7101, also contemplates her need and use of continuous medication to try and control this disease. There is no indication her condition causes or results in any symptoms or consequent impairment falling so far outside the Rating Schedule as to render it inadequate. See Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995); and VAOPGCPREC 6-96 (August 16, 1996).


ORDER

An initial compensable rating for the hypertension prior to September 20, 2013 is denied.


REMAND

Although the Board sincerely regrets the additional delay that inevitably will result from this remand, further development of the claim for a rating higher than 10 percent for the hypertension since September 20, 2013, is essential to its fair disposition.


For one, another VA compensation examination is needed reassessing the severity of this disability. The Veteran last underwent a relevant VA examination for this disability in September 2013, so about 11/2 years ago. Also, during her November 2014 Travel Board hearing, she indicated that her hypertension had been progressively worsening since, including in terms of the possible associated complications already mentioned (i.e., the DVT), and she discussed the negative impact it is having on her ability to renew her commercial driver's license (CDL), which is a requirement of her job. As an example, the amount of medication she has to take for her hypertension, and their possible side effects, may preclude her from renewing her CDL. Thus, in light of the amount of time since her last examination for this disability and the possible increase in its severity since, reexamination is warranted. See Palczewski v. Nicholson, 21 Vet. App. 174, 181-82 (2007), citing Caluza v. Brown, 7 Vet. App. 498, 505 -06 (1998) ("Where the record does not adequately reveal the current state of the claimant's disability . . . the fulfillment of the statutory duty to assist requires a thorough and contemporaneous medical examination."). See also Snuffer v. Gober, 10 Vet. App. 400 (1997); Caffrey v. Brown, 6 Vet. App. 377 (1994) (wherein the Court determined the Board should have ordered a contemporaneous examination of the Veteran because a 
23-month old examination was too remote in time to adequately support the decision in an appeal for an increased rating); VAOPGCPREC 11-95 (1995).

Accordingly, this additional component of the claim is REMANDED for the following additional development and consideration:

1. Schedule another VA compensation examination to reassess the severity of the Veteran's hypertension and any possible complications of it (including DVT). All necessary clinical and diagnostic testing and evaluation needed to reassess the severity of this disability must be performed. This includes taking the necessary amount of blood pressure readings and considering those since September 2013 so as to allow VA adjudicators to address the relevant rating criteria of 38 C.F.R. § 4.104, DC 7101.

Therefore, the claims file, including a complete copy of this decision and remand, must be made available to and reviewed by the examiner for the history of this disability, including to as mentioned consider prior blood pressure readings in years past.

2. Then readjudicate this remaining component of the claim in light of this and all other additional evidence. If a higher rating for this service-connected disability is not granted to the Veteran's satisfaction, send her and her representative another SSOC and give them time to submit additional evidence and/or argument in response before returning the file to the Board for further appellate consideration of this claim.

The Veteran has the right to submit additional evidence and argument concerning this claim the Board is remanding. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
KEITH W. ALLEN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs